IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

CENTER FOR BIOLOGICAL DIVERSITY, a non-profit organization,

    Plaintiff,

v.

MIKE LEAVITT, Administrator, Environmental Protection Agency, and WAYNE NASTRI, Region 9 Administrator, Environmental Protection Agency,

    Defendants.

No. C 02-01580 JSW

**ORDER RE CROSS-MOTIONS FOR SUMMARY JUDGMENT**

    Now before the Court are the cross-motions for summary judgment of Plaintiff Center for Biological Diversity ("the Center") and Defendants Mike Leavitt, Wayne Nastri, and the United States Environmental Protection Agency ("EPA"). Having carefully reviewed the parties' papers and considered their arguments and the relevant legal authority, and good cause appearing, the Court hereby GRANTS Plaintiff's third motion for summary judgment and DENIES Defendants' cross-motion for summary judgment.

**BACKGROUND**

    In this action, the Center for the third time seeks to compel the EPA to enter into consultation with the United States Fish and Wildlife Service ("FWS") regarding the impacts of EPA's pesticide registrations upon the California red-legged frog. The Center initiated this action on April 2, 2002. Following the Center's first motion for summary judgment, the Court

ruled that Defendants had fulfilled their obligations under Section 7(a)(1) of the Endangered Species Act ("ESA") because the EPA was involved in some proactive conservation activities. The Court further determined that the Center had Article III standing to sue on its ESA Section 7(a)(2) claim and denied Defendants' motion for summary judgment on that ground. Further, the Court held that issues of material fact remained with respect to the Center's ESA Section 7(a)(2) claim as the Center had failed to set out evidence enabling the Court to review each of the listed pesticides individually. Accordingly, the Court denied Plaintiff's motion for summary judgment in its entirety and denied Defendants' motion on the standing issue.

Subsequently, Plaintiff submitted a second motion for summary judgment with accompanying expert declarations in an attempt to provide the Court with pesticide-by-pesticide evidence. Defendants objected to the timing of the motion and claimed to require further discovery on Plaintiff's expert. The Court granted Defendants' request to conduct further discovery and denied the motion.

Now before the Court is the Center's third attempt to demonstrate, now on a pesticide-by-pesticide basis, that Defendants have failed to meet its obligations under Section 7(a)(2) of the ESA by failing to engage in the consultation process regarding the effects of 66 pesticide registrations on the federally-listed California red-legged frog.

**A.     Pesticide Registrations.**

Pursuant to the Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA"), the EPA is responsible for approving registrations of pesticides. 7 U.S.C. §§ 136-136y. Once registered, a pesticide may be sold, and the registration determines the manner in which the pesticide may be used. The EPA's pesticide registration decisions must be based on several criteria, including the environmental effects of the intended use of the pesticides, and registrants must submit the data necessary for the EPA's evaluation of each pesticide. 7 U.S.C. § 136a(c)(5)(C)-(D); § 136a(d). Registrations are of indefinite duration, but pesticide registrations must periodically be reviewed, and the EPA's goal must be to review the registration for each pesticide every fifteen years. 7 U.S.C. § 136a(g). The EPA retains

ongoing discretion to alter the terms of a registration, compel submission of additional information about a pesticide, cancel a registration, or re-register a pesticide. *Id*.

**B.    Consultation Under the Endangered Species Act.**

The ESA creates a comprehensive statutory scheme for the protection of endangered species. 16 U.S.C. §§ 1531-1544; *Tennessee Valley Auth. v. Hill*, 437 U.S. 153, 175-181 (1978). Section 7 of the ESA contains specific provisions designed to prevent federal agencies from taking actions harmful to listed species and creates affirmative obligations for those agencies to conserve listed species. 16 U.S.C. § 1536.

**1.    Section 7(a)(2) of the Endangered Species Act.**

Section 7 of the ESA imposes an affirmative duty on federal agencies designed to prevent harm arising from federal agency actions to listed or threatened species. 16 U.S.C. § 1536. Under Section 7(a)(2) of the ESA, each federal agency must "insure that any action authorized, funded, or carried out by such agency . . . is not likely to jeopardize the continued existence of any endangered species or threatened species or result in the destruction or adverse modification of habitat of such species. 16 U.S.C. § 1536(a). Pursuant to this obligation, agencies must consult with FWS or the National Marine Fisheries Service ("NMFS") in order to determine the likely effects of proposed agency actions upon listed species and the ways in which those effects can be avoided or mitigated. *Id*. A federal agency, at the earliest possible time, must determine whether any proposed action may affect the listed species. 50 C.F.R. § 402.14. FWS regulations implementing section § 7(a)(2) state that such formal or informal consultation must be initiated whenever an agency determines that its action may affect a listed species, and that ongoing actions must be re-evaluated when species that may be affected by those actions are listed. 50 C.F.R. §§ 402.14, 402.16.

Only after an agency determines that the proposed action will have no effect on a listed species or any designated critical habitat, is consultation not required under the ESA. *Southwest Center for Biological Diversity v. United States Forest Service*, 100 F.3d 1443, 1447 (9th Cir. 1996); *see also Pacific Rivers Council v. Thomas*, 30 F.3d 1050, 1054 n.8 (9th Cir. 1994). If the action agency determines that its action is "likely to adversely affect" a protected species, it

3

must engage in formal consultation. If the action agency determines that an action is "not likely to adversely affect" the species, it may attempt informal consultation, or under the recent counterpart regulations, it need not consult if the EPA and the Service have entered into an alternative consultation agreement. 50 C.F.R. § 402.45.

### 2. The California Red-Legged Frog.

The historic range of the California red-legged frog has been threatened by, among other things, industrial agriculture development and, potentially, the use of pesticides in and around the vicinity of the frog's critical habitat. In light of drastic declines in the number of frogs in various California counties due to encroachment into the frog's habitat, in 1996 the FWS protected the California red-legged frog as a "threatened" species under the ESA. 16 U.S.C. §§ 1531-1544.

Pursuant to this third motion for summary judgment motion, Plaintiff requests declaratory relief that EPA has violated its obligations under the ESA. Plaintiff requests an order directing EPA to begin consultation on any pesticide that may affect the red-legged frog and to complete such consultation within twelve months. Plaintiff contends that the sole question before the Court is "whether the Section 7 consultation process must be initiated." (Reply Br. at 13 n.8.)

Defendants again contend that Plaintiff has not shown that any challenged pesticide may affect the frog and thus cannot prevail on the merits of its § 7(a)(2) claim. Accordingly, Defendants seek summary judgment in their favor.

### LEGAL STANDARD

Summary judgment is granted when no genuine issue of material fact exists, and no reasonable trier of fact could find other than for the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The moving party "has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment." *Nissan Fire & Marine Ins. Co. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). Once a summary judgment motion is made and properly supported, the nonmoving party may not rest on the mere allegations of its

pleadings, but must set forth specific facts showing that there is a genuine issue for trial. *See* Fed R. Civ. P. 56(e); *Celotex Corp.*, 477 U.S. at 325.

## ANALYSIS

In its previous order on Plaintiff's initial motion for summary judgment, the Court determined that although Plaintiff's evidence did suggest connections between pesticide use and harm to the California red-legged frog, it was not organized in a fashion that permitted the Court to assess, on a pesticide-by-pesticide basis, the merits of Plaintiff's contentions that individual pesticides may affect the frog. (*See* Order dated June 30, 2003 at 10.) The Court clearly held that Plaintiff's burden was merely to demonstrate that a pesticide may potentially affect the frog, or that in this procedural posture, to demonstrate that there is "at least some question about whether a pesticide registration would affect the frog." (*See id.* at 10 n.8.) Upon re-submission of the evidence and the attendant declarations of Plaintiff's experts, the Court is satisfied that Plaintiff has been able to demonstrate that there is at least some question about whether certain pesticides may affect the frog. This finding is sufficient to trigger the obligation of Defendants to conduct the 'may affect' determination under the ESA § 7(a)(2) for those listed pesticide ingredients.

**A.    Pesticides Which Can be Found in the Frog's Habitat Trigger the EPA's Obligation to Engage in the 'May Affect' Determination and Possibly Further Consultation as Required Under the Endangered Species Act.**

The core question raised by Plaintiff's § 7(a)(2) claim is whether any of the disputed registered pesticides may affect the California red-legged frog. Plaintiff has demonstrated that 47 of the disputed 66 pesticides are applied within the frog's habitat and thus has demonstrated that further evaluation of the effects on the endangered species is warranted. (*See* Docket No. 46, 1997 California Department of Pesticide Regulation report "Pesticides by Species.") The report explicitly concludes that the close proximity of applications in the 47 listed chemicals to

5

1  red-legged frog habitat warrants "further evaluation." (*See* "Pesticides by Species" Report at
2  2.)[1]
3      The threshold for the requirement to make the determination of whether a particular
4  agency action may affect a listed species is triggered where, as here, "an endangered or
5  threatened species may be present in the area of the proposed action." *City of Sausalito v.*
6  *O'Neill*, 386 F.3d 1186, 1215 (9th Cir. 2004); *see also Pacific Rivers Council v. Thomas*, 30
7  F.3d 1050, 1055 (9th Cir. 1994) (agency actions 'may affect' the protected salmon where "the
8  plans set forth criteria for harvesting resources within the salmon's habitat.") Plaintiff's
9  submission of the declaration of Susan E. Kegley satisfies this Court's requirement that Plaintiff
10 demonstrate "at least some question about whether a pesticide registration would affect the
11 frog." (*See* Order dated June 30, 2003 at 10 n.8; *see also* Docket No. 85, Second Declaration of
12 Susan E. Kegley.) There is sufficient evidence therefore to trigger Defendants' initial
13 obligation to conduct the 'may affect' determination and to engage in further consultation, if
14 necessary.
15     The Center urges this Court to make a determination that the presence of the chemicals
16 in the frog's habitat satisfies the 'may affect' standard. However, once a procedural violation
17 has been found to have occurred, it is not the function of the courts to make a judgment
18 regarding the actual effects of the proposed agency action. "Only by following the procedures
19 can proper evaluations be made. It is not the responsibility of the plaintiffs to prove, nor the

---

[1] Those chemicals are: 2,4-D, acephate, azinphos-methyl, bensulide, captan, carbaryl, chloropicrin, chlorothalonil, chlorpyrifos, chlorthal-dimethyl (DCPA), diazinon, dicofol, diflubenzuron, dimethoate, disulfoton, endosulfan, EPTC, esfenvalerate, fenamiphos, glysophate, iprodione, malathion, mancozeb, maneb, metam sodium, methamidophos, methidathion, methomyl, methoprene, myclobutanil, naled, oxamyl, oxydemeton-methyl, oxyfluoren, paraquate dichloride, pendimethalin, permethrin, phosmet, prometryn, propargite, propyzamide (pronamide), rotenone, simazine, strychnine, triclopyr, trifluralin, and vinclozolin.
    The FWS 2002 Recovery Plan for the California Red-Legged Frog covers 24 of these listed pesticide ingredients, thereby demonstrating that the threshold for making the 'may affect' determination has already been met for those ingredients. (*See* First Declaration of Arthur Jean B. Williams, Ex. 7.) However, at least at the time of filing their pleadings in this matter, Defendants have failed even to initiate the process for making any 'may affect' determination for the undisputed 24 ingredients. The Court hereby finds that the additional 23 pesticides that are located within the frog's habitat meet that same initial threshold and warrant the same priority of attention.

1  function of the court to judge, the effect of a proposed action on an endangered species when
2  proper procedures have not been followed." *Thomas v. Peterson*, 753 F.2d 754, 765 (9th Cir.
3  1985) (citation omitted)).  A plaintiff's burden in establishing a procedural violation is satisfied
4  by demonstrating that the "circumstances triggering the procedural requirement exist, and that
5  the procedures have not been followed." *Id.*

6      The Center has submitted evidence sufficient to demonstrate a potential causal link
7  between 47 of the listed active ingredients and adverse effects on the frog and its habitat.
8  Therefore, as to those 47 pesticide ingredients found in the frog's habitat, the Court finds that
9  the EPA has failed to comply with Section 7(a)(2) with respect to its pesticide registrations and
10 the determination of the effects of those actions on the threatened species.  Depending upon the
11 results of such 'may affect' determinations, the EPA may be under the further obligation to
12 engage in formal or informal consultation, or to enter into an alternative consultation agreement,
13 in compliance with the counterpart regulations.

14     In order to ensure compliance with the ESA and its implementing regulations, the action
15 agency must engage in the consultation process, which begins with the initial 'may affect'
16 determination.[2]  In this regard, Plaintiff has submitted significant scientific evidence
17 demonstrating potential adverse effects to the frog by the listed chemicals found in the species'
18 habitat.  The Court counsels the EPA to further investigate the evidence submitted by Plaintiff
19 in its efforts to make its own 'may affect' determinations in a timely and effective manner.

20     Plaintiff requests that the Court impose a deadline of not more than twelve months for
21 completion of the entire consultation process.  The Court finds that although the ESA indicates
22 Congress' intent to bring about quick resolution of actions that may place a species at risk, the
23 Court is not satisfied that the parties have adequately briefed the timing necessary for
24 compliance.  Defendants are compelled to review their actions at the "earliest possible time to

---

[2] Counsel for Plaintiff clarified his position in oral argument before this Court with regard to seeking compel compliance the consultation requirements of the EPA.  Counsel stated "when we discuss consultation in the consultation process, which includes no affect determinations, may affect determination, not likely to adversely affect, et cetera." (Transcript of June 10, 2005 hearing at 26:21-25.)  Conducting the 'may affect' analysis is only the first step in the consultation process.

7

1  determine whether any action may affect listed species or critical habitat." 50 C.F.R. §
2  402.14(a). Such review to commence nearly 10 years after the listing of the species does not
3  appear to be the "earliest possible time." The Court hereby orders the parties to address both a
4  reasonable deadline for initiation of the 'may affect' determination as well as an estimated
5  deadline for the completion of full consultation as necessary.[3]

6  At the oral argument for this matter, the parties indicated their willingness to meet and
7  confer to discuss the timing of compliance. The parties are hereby ordered to meet and confer
8  in person to discuss the timing of compliance with this Order and to inform the Court by joint
9  submission by no later than November 18, 2005 of the status of the parties' efforts to arrive at
10 an agreed-upon schedule for consultation compliance. Should the parties find themselves
11 unable to agree upon a schedule, they should so inform the Court in separate submissions by no
12 later than November 18, 2005, detailing their respective positions on the current and future state
13 of compliance with this Order, as well as their positions on their willingness to participate in a
14 conference before a Magistrate Judge.

**B.      Pesticides Which Are Not Found in the Frog's Habitat Also Trigger the EPA's Obligation to Engage in the 'May Affect' Determination and Possibly Further Consultation as Required Under the Endangered Species Act.**

17 For the 19 remaining pesticides, about which Plaintiff has alleged only presence in the
18 surface water and/or air in California, the Court finds that the expert opinion submitted by Dr.
19 Carlos Davidson in support of Plaintiff's motion indicates that there is a reasonable scientific
20 basis for the assertion that the remaining 19 listed pesticide ingredients may bear on the decline
21 in the frog's population. (*See* Docket No. 48, Declaration of Dr. Carlos Davidson.) Again,
22 Plaintiff has demonstrated that there is at least some question about whether these pesticide
23 registrations would affect the frog. Therefore, the Court concludes that Defendants must
24 perform the 'must affect' determination for these registered pesticides as well. However, the
25 priority for compliance with the initiation of the Section 7 consultation process for the 47
26 chemicals currently found in the frog's habitat is greater and should therefore take precedence.

---

[3] In this regard, the Court has taken into consideration the schedule for relief agreed upon by the parties and endorsed by the Court in *Washington Toxics Coalition v. Whitman*, 2002 U.S. Distr. LEXIS 27654, *44 (W.D. Wash. 2002)

Again, the only remaining contention is the timing for the agency's determination. The parties are hereby ordered to meet and confer in an effort to fix an agreed-upon schedule for initial 'must affect' determination of the remaining 19 pesticides and to inform the Court by joint submission by no later than November 18, 2005 of the status of the parties' efforts to arrive an agreed-upon schedule for the effects determinations. Should the parties find themselves unable to agree upon a schedule, they should so inform the Court in separate submissions by no later than November 18, 2005, detailing their respective positions on the current and future state of compliance with this Order, as well as their positions with regard to participating in a conference before a Magistrate Judge.

## CONCLUSION

For the foregoing reasons, the Center's third motion for summary judgment is GRANTED with respect to its claim that Defendants have violated § 7(a)(2) of the ESA by failing to initiate consultation. Defendants' cross- motion for summary judgment is DENIED.

**IT IS SO ORDERED.**

Dated:   September 19, 2005

JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE