Justin Augustine (CA Bar # 235561)
CENTER FOR BIOLOGICAL DIVERSITY
1095 Market Street, Suite 511
San Francisco, CA 94103
Telephone:  (415) 436-9682
Facsimile:  (415) 436-9683
jaugustine@biologicaldiversity.org

Brendan Cummings (CA Bar # 193952)
CENTER FOR BIOLOGICAL DIVERSITY
P.O. Box 549
Joshua Tree, CA 92252
Telephone:  (760) 366-2232
Facsimile:  (760) 366-2669
bcummings@biologicaldiversity.org

Michael W. Graf (CA Bar # 136172)
Law Offices
227 Behrens Street
El Cerrito, CA 94530
Telephone:  (510) 525-7222
Facsimile:  (510) 525-1208
mwgraf@aol.com

Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY, a non-profit corporation, <br><br> Plaintiff, <br><br> v. <br><br> STEPHEN L. JOHNSON, Administrator, Environmental Protection Agency, and WAYNE NASTRI, Region 9 Administrator, Environmental Protection Agency, <br><br> Defendants, <br><br> and <br><br> CROPLIFE AMERICA, AMERICAN FOREST & PAPER ASSOCIATION, WESTERN PLANT HEALTH ASSOCIATION, OREGONIANS FOR FOOD AND SHELTER, AND SYNGENTA CROP PROTECTION, INC., <br><br> Defendants-Intervenors. | Case No.: 02-1580-JSW (JL) <br><br> **STIPULATED INJUNCTION AND [PROPOSED] ORDER** |

Plaintiff Center for Biological Diversity (hereinafter "the Center"); Defendants Stephen L. Johnson, Administrator, Environmental Protection Agency, and Wayne Nastri, Region 9 Administrator, Environmental Protection Agency (hereinafter "EPA"); and Defendant-Intervenors CropLife America, American Forest and Paper Association, Western Plant Health Association, Oregonians for Food and Shelter, and Syngenta Crop Protection, Inc., by and through the undersigned counsel, state as follows:

WHEREAS, on April 2, 2002, the Center filed a complaint for declaratory and injunctive relief pursuant to Section 7 of the Endangered Species Act ("ESA") in the Northern District of California, which alleged that the EPA had failed to comply with Section 7 regarding the impacts 66 pesticide active ingredients may have upon the California red-legged frog, a federally protected species listed as threatened under the Endangered Species Act;

WHEREAS, Plaintiff maintains that the 66 Pesticides can adversely affect the California red-legged frog and its aquatic habitats;

WHEREAS, Intervenors maintain that there is no effect from the use of the 66 Pesticides on the California red-legged frog;

WHEREAS, Federal Defendants maintain that they cannot determine the effects of the 66 Pesticides on the California red-legged frog, if any, and define appropriate protective measures, if any, until they have completed further scientific analyses, which may include, but are not limited to, further review under the Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA"), §§ 7 U.S.C. 136-136(y), effects determinations made pursuant to the ESA, or consultation with the United States Fish and Wildlife Service under the ESA, as appropriate;

WHEREAS, on September 19, 2005, the Court determined that the potential of the 66 Pesticides to affect the California red-legged frog "is sufficient to trigger the obligation of Defendants to conduct the 'may affect' determination under ESA § 7(a)(2) for those listed pesticide ingredients,"  Docket No. 198;

WHEREAS, the Court ordered the Parties to meet-and-confer in an effort to set an agreed-upon schedule for the EPA to comply with the Court's September 19, 2005 Order;

1

1   WHEREAS, on January 20, 2006, the Plaintiff filed a motion for injunctive relief and the

2   Federal Defendants and Intervenors object to the relief sought by Plaintiff;

3   WHEREAS, the Parties have met and conferred in an attempt to reach agreement on the

4   timing of the EPA's compliance with the Court's order and the scope of reasonable interim

5   injunctive relief;

6   WHEREAS, the Parties, through their authorized representatives, have reached

7   agreement on the terms of a stipulated order that they consider to be a just, fair, adequate, and

8   equitable resolution of the remaining issues in this case;

9   WHEREAS, all Parties agree that issuance of an order conforming to these terms is in

10  the public interest and is an appropriate way to resolve the remaining disputed issues;

11  WHEREAS, the EPA published in the Federal Register a request for public comment on

12  the terms of this stipulated order and has considered the received comments;

13  NOW, THEREFORE, IT IS STIPULATED BY AND BETWEEN THE PARTIES

14  THAT THE COURT SHOULD ISSUE AN ORDER AS FOLLOWS:

15  <u>**SECTION 7 CONSULTATION SCHEDULE**</u>

16  **1. Compliance with Section 7(a)(2) of the Endangered Species Act.**

17  The EPA shall make effects determinations and initiate consultation, as appropriate, with

18  the United States Fish and Wildlife Service, pursuant to applicable regulations in effect at the

19  time when the determination is made, regarding the potential effects of 66 pesticide active

20  ingredient registrations on the California red-legged frog.  The 66 pesticide active ingredients

21  are: 1,3-dichlorpropene; 2,4-D; acephate; alachlor; aldicarb; atrazine; azinphos-methyl;

22  bensulide; bromacil; captan; carbaryl; chloropicrin; chlorothalonil; chlorpyrifos; chlorthal-

23  dimethyl (DCPA); diazinon; dicofol; diflubenzuron; dimethoate; disulfoton; diuron; endosulfan;

24  EPTC; esfenvalerate; fenamiphos; glyphosate; hexazinone; imazapyr; iprodione; linuron;

25  malathion; mancozeb; maneb; metam sodium; methamidophos; methidathion;  methomyl;

26  methoprene; methyl parathion; metolachlor; molinate; myclobutanil; naled; norflurazon;

27  oryzalin; oxamyl; oxydemeton-methyl;  oxyfluoren; paraquat dichloride; pendimethalin;

28  permethrin; phorate; phosmet; prometryn; propanil; propargite; propyzamide (pronamide);

STIPULATED INJUNCTION AND [PROPOSED] ORDER
Case No. C-02-1580-JSW

rotenone; simazine; SSS-tributyl phosphororithiolate (DEF or Tribufos); strychnine; thiobencarb; triclopyr; trifluralin; vinclozolin; and ziram (hereinafter "the Pesticide(s)").

**2.  Schedule for Compliance.**

The EPA shall make the effects determinations described in Paragraph 1 (and initiate consultation, as appropriate) on the following schedule:

EPA shall make effects determinations and initiate consultation, as appropriate, for 10 of the Pesticides within 9 months of the date of this Order.

EPA shall make effects determinations and initiate consultation, as appropriate, for an additional 10 of the Pesticides (for a total of 20) within 12 months of the date of this Order.

EPA shall make effects determinations and initiate consultation, as appropriate, for an additional 7 of the Pesticides (for a total of 27) within 16 months of the date of this Order.

EPA shall make effects determinations and initiate consultation, as appropriate, for an additional 7 of the Pesticides (for a total of 34) within 20 months of the date of this Order.

EPA shall make effects determinations and initiate consultation, as appropriate, for an additional 7 of the Pesticides (for a total of 41) within 24 months of the date of this Order.

EPA shall make effects determinations and initiate consultation, as appropriate, for an additional 8 of the Pesticides (for a total of 49) within 28 months of the date of this Order.

EPA shall make effects determinations and initiate consultation, as appropriate, for an additional 8 of the Pesticides (for a total of 57) within 32 months of the date of this Order.

EPA shall make effects determinations and initiate consultation, as appropriate, for an additional 9 of the Pesticides (for a total of 66) within 36 months of the date of this Order.

EPA shall make effects determinations and initiate consultation, as appropriate, for 66 of the Pesticides within 36 months of the date of this Order.

**<u>INTERIM INJUNCTIVE RELIEF</u>**

**3.  Definitions.**

    **a.  "Aquatic Feature" defined.**  An "Aquatic Feature" is defined as fresh-water habitats in or near lowlands or foothills with dense, shrubby, or emergent vegetation.  Such areas include natural or manmade (e.g., stock) ponds, slow-

STIPULATED INJUNCTION AND [PROPOSED] ORDER
Case No. C-02-1580-JSW

moving streams or pools within streams, and other ephemeral or permanent waterbodies that typically become inundated during winter rains such as plunge pools, intermittent creeks, seeps, and quiet water refugia.  For purposes of establishing whether the restrictions included within this stipulation apply as an initial matter, such areas do not include those areas not otherwise meeting the definition of aquatic breeding habitat or non-breeding aquatic habitat described by the U.S. Fish and Wildlife Service in the Federal Register on April 13, 2006 and codified at 50 C.F.R. § 17.95.

   b. **"Upland Habitat" Defined.**  "Upland Habitat" includes all areas that are both within 200 feet of the mean high-water mark of an Aquatic Feature and meet the definition of upland habitat described by the U.S. Fish and Wildlife Service in the Federal Register on April 13, 2006 and codified at 50 C.F.R. § 17.95.

**4.  Use Authorizations Enjoined, Vacated, and Set Aside.**

The EPA's authorization of any use of any of the Pesticides within the geographical areas described in this section is hereby ENJOINED, VACATED, and SET ASIDE as follows, except as provided by the exclusions, exemptions, and termination provisions described below in paragraphs 5, 6, 7, and 8:

   a. **Final Critical Habitat.**

The EPA's authorization of any use of any of the Pesticides is hereby ENJOINED, VACATED, and SET ASIDE in all areas described as aquatic breeding, non-breeding aquatic, or upland critical habitat for the California red-legged frog, *Rana aurora draytonii*, by the U.S. Fish and Wildlife Service in the Federal Register on April 13, 2006 at 71 Fed. Reg. 19244, 19294, and codified at 50 C.F.R. § 17.95 ("hereinafter "April 13, 2006 Federal Register Notice").  A copy of the U.S. Fish and Wildlife Service's descriptions of the aquatic breeding, non-breeding aquatic, and upland critical habitat for the California red-legged frog is attached hereto as Exhibit 1.

STIPULATED INJUNCTION AND [PROPOSED] ORDER
Case No. C-02-1580-JSW

**b.  California Red-Legged Frog Populations Outside Final Critical Habitat.**

The EPA's authorization of any use of any of the Pesticides is hereby ENJOINED, VACATED, and SET ASIDE in all Aquatic Features and Upland Habitats found in the following 564 sections of California:

M26N07W25,   M17N16W03,   M17N17W07,   M15N16W33,   M15N16W34,
M14N16W33,   M04N03W11,   M04N03W21,   M04N03W22,   M04N03W30,
M04N03W27,   M04N03W25,   M04N02W30,   M04N02W31,   M03N03W05,
M02N03W10,   M02N04W14,   M02N03W18,   M02N03W20,   M02N01W21,
M02N03W30,   M02N03W31,   M02N03W33,   M01N03W07,   M01N03W08,
M28N12E26,   M14N11E21,   M13N11E01,   M10N12E01,   M10N08E10,
M08N14E21,   M04N11E08,   M02N14E23,   M01N18E01,   M01S02E22,
M01S02E23,   M01S02E24,   M01S03E19,   M01S03E20,   M01S03E21,
M01S03E22,   M01S03E23,   M01S02E25,   M01S03E30,   M01S03E29,
M01S03E28,   M01S02E36,   M01S03E31,   M01S03E32,   M01S03E35,
M02S06W03,   M02S01E05,   M02S01W05,   M02S02E05,   M02S02E03,
M02S02E02,   M02S03E02,   M02S06W11,   M02S06W12,   M02S03E01,
M02S04E06,   M02S01E08,   M02S01E09,   M02S02E08,   M02S02E12,
M02S03E08,   M02S03E12,   M02S04E07,   M02S01E17,   M02S01E16,
M02S01W18,   M02S02E14,   M02S02E13,   M02S03E15,   M02S04E18,
M02S01E19,   M02S01E20,   M02S01E21,   M02S01E22,   M02S02E24,
M02S03E20,   M02S06W26,   M02S03E22,   M02S04E19,   M02S04E20,
M02S01E29,   M02S01E28,   M02S01E27,   M02S02E27,   M02S02E26,
M02S03E26,   M02S04E28,   M02S01E33,   M02S01E34,   M02S01E35,
M02S02E33,   M02S02E35,   M02S02E36,   M02S03E35,   M02S04E33,
M03S01W04,   M03S01W03,   M03S01W06,   M03S01E04,   M03S01E03,
M03S01E02,   M03S02E05,   M03S02E06,   M03S02E02,   M03S03E06,
M03S02E12,   M03S03E09,   M03S04E10,   M03S01W15,   M03S02E13,
M03S04E16,   M03S01W22,   M03S02E24,   M03S03E20,   M03S06W26,

| | | | | |
|---|---|---|---|---|
| 1 | M03S04E20, | M03S04E24, | M03S01W29, | M03S02E30, | M03S03E30, |
| 2 | M03S03E26, | M03S03E25, | M03S06W35, | M03S04E29, | M03S05W31, |
| 3 | M03S04E25, | M03S01W31, | M03S01E36, | M03S02E31, | M03S02E32, |
| 4 | M03S03E36, | M03S04E32, | M03S04E33, | M04S06W02, | M03S04E34, |
| 5 | M03S04E35, | M04S05W03, | M04S01E01, | M04S02E03, | M04S06W10, |
| 6 | M04S03E08, | M04S01W17, | M04S01W14, | M04S01W13, | M04S01E18, |
| 7 | M04S01E17, | M04S01E15, | M04S03E18, | M04S06W22, | M04S01E24, |
| 8 | M04S05W27, | M04S02E27, | M04S01E34, | M04S02E35, | M05S01E03, |
| 9 | M05S01E01, | M05S03E06, | M05S06W10, | M05S06W11, | M05S06W12, |
| 10 | M05S01E12, | M05S02E09, | M05S02E10, | M05S02E11, | M05S02E12, |
| 11 | M05S05W16, | M05S05W14, | M05S01W13, | M05S01E14, | M05S04W20, |
| 12 | M05S05W29, | M05S05W32, | M06S01E02, | M06S04W08, | M06S03W07, |
| 13 | M06S03W08, | M06S03W17, | M06S03W23, | M06S05W26, | M06S05W35, |
| 14 | M07S05W04, | M07S04W06, | M07S05W10, | M07S02W16, | M07S03W29, |
| 15 | M07S05W32, | M07S03W33, | M07S05E33, | M08S05W05, | M08S05W03, |
| 16 | M08S04W04, | M08S05E04, | M08S05W09, | M08S05W10, | M08S05W11, |
| 17 | M08S08E04, | M08S02W11, | M08S05E10, | M08S02E16, | M08S02E15, |
| 18 | M08S05W24, | M08S05W20, | M08S05W25, | M08S03E29, | M08S06E30, |
| 19 | M08S04W34, | M08S03W32, | M08S01E32, | M08S03E32, | M08S05E31, |
| 20 | M09S05W03, | M09S03E06, | M09S03E02, | M09S02E07, | M09S04E09, |
| 21 | M09S04E10, | M09S05E11, | M09S06E07, | M09S04W18, | M09S01W15, |
| 22 | M09S04E16, | M09S04W21, | M09S01W23, | M09S04W28, | M09S06E19, |
| 23 | M09S03W29, | M09S03E25, | M09S02E25, | M09S06E30, | M09S04W35, |
| 24 | M09S01W31, | M09S01W32, | M09S03E36, | M09S05E35, | M09S06E31, |
| 25 | M10S01E06, | M10S05E01, | M10S04E03, | M10S04E02, | M10S07E06, |
| 26 | M10S04E11, | M10S04E12, | M10S02E11, | M10S07E17, | M10S02W21, |
| 27 | M10S05E20, | M10S03E30, | M10S06E28, | M10S06E25, | M10S02W33, |
| 28 | M11S02W10, | M11S05E11, | M11S05E12, | M11S08E07, | M11S02W15, |

STIPULATED INJUNCTION AND [PROPOSED] ORDER
Case No. C-02-1580-JSW

| | | | | |
|---|---|---|---|---|
| 1 | M11S02W16, | M11S02W17, | M11S02W18, | M11S01E14, | M11S03E17, |
| 2 | M11S02W20, | M11S02W21, | M11S02W22, | M11S04E30, | M11S04E29, |
| 3 | M11S05E29, | M11S05E26, | M11S04E34, | M11S08E32, | M11S08E33, |
| 4 | M11S08E36, | M12S02E05, | M12S03E03, | M12S03E02, | M12S04E04, |
| 5 | M12S03E11, | M12S02E18, | M12S04E16, | M12S06E16, | M12S03E28, |
| 6 | M12S05E25, | M12S09E27, | M12S05E33, | M12S06E31, | M13S01E01, |
| 7 | M13S02E06, | M13S06E06, | M13S09E04, | M13S05E08, | M13S06E07, |
| 8 | M13S02E23, | M13S02E24, | M13S03E22, | M13S11E19, | M13S11E20, |
| 9 | M13S03E29, | M13S10E31, | M13S10E32, | M14S05E02, | M14S10E03, |
| 10 | M14S03E13, | M14S07E28, | M15S08E02, | M18S01W28, | M18S01W34, |
| 11 | M16S01E18, | M16S08E25, | M16S01E31, | M17S02E22, | M17S02E26, |
| 12 | M18S04E05, | M18S04E09, | M19S03E01, | M19S02E32, | M20S02E09, |
| 13 | M26S07E21, | M26S08E32, | M27S08E02, | M27S08E09, | M27S08E22, |
| 14 | M27S09E19, | M27S09E21, | M27S09E22, | M27S08E26, | M27S09E25, |
| 15 | M27S09E32, | M27S09E33, | M27S09E34, | M27S11E32, | M28S09E08, |
| 16 | M28S09E16, | M28S09E23, | M28S09E28, | M28S10E29, | M28S11E25, |
| 17 | M28S09E35, | M28S10E31, | M28S10E32, | M28S09E36, | M29S10E02, |
| 18 | M29S10E12, | M29S10E14, | M29S10E13, | M29S10E23, | M29S11E33, |
| 19 | M30S11E05, | M30S11E12, | M30S12E07, | M30S12E18, | M30S11E34, |
| 20 | M31S12E31, | M02N01W15, | M02N01W22, | M02N01W24, | M02N01W25, |
| 21 | M02N01E29, | M02N01E27, | M02N01W36, | M02N01E33, | M01N01E08, |
| 22 | M01N01E11, | M01N01E12, | M01N02E18, | M01N02E17, | M01N01W33, |
| 23 | M01S02W06, | M01S02W05, | M01S01W06, | M01S01W05, | M01S02E04, |
| 24 | M01S03W10, | M01S02W08, | M01S02E09, | M01S02E12, | M01S03E08, |
| 25 | M01S03W16, | M01S01E14, | M01S02E14, | M01S03E17, | M01S03E16, |
| 26 | M01S01W22, | M01S01E20, | M01S01E23, | M01S01E24, | M01S02E19, |
| 27 | M01S02E20, | M01S02E30, | M01S01E33, | M01S02E31, | M02S06W01, |
| 28 | M01N01E28, | M01N01E36, | M01S01E04, | M01S01E03, | M09N05W29, |

1  M07N11W20,   M07N07W34,   M07N07W35,   M06N11W04,   M06N11W15,

2  M06N11W14,   M06N09W19,   M06N10W35,   M06N09W36,   M05N09W04,

3  M05N08W03,   M05N08W09,   M05N10W17,   M05N10W13,   M05N07W30,

4  M05N06W27,   M04N07W06,   M04N07W05,   M04N07W04,   M04N06W03,

5  M04N07W18,   M04N06W25,   M04N05W30,   M04N06W35,   M04N06W36,

6  M01S07W12,   M01N05W32,   S06N13W16,   S05N04W10,   S03N04W23,

7  S01N03W10,   S01N17W18,   S11N35W18,   S11N35W17,   S11N34W29,

8  S11N34W25,   S11N34W32,   S10N36W02,   S10N36W01,   S10N35W01,

9  S10N34W05,   S10N34W04,   S10N34W07,   S10N34W08,   S10N35W16,

10  S10N34W21,   S10N33W22,   S10N34W29,   S10N34W32,   S10N34W33,

11  S09N34W06,   S09N34W05,   S09N34W04,   S09N34W03,   S09N34W08,

12  S09N32W07,   S09N32W08,   S09N32W15,   S09N32W13,   S09N35W24,

13  S09N35W27,   S09N35W32,   S08N35W06,   S08N35W05,   S08N32W30,

14  S08N34W32,   S07N35W09,   S07N35W10,   S07N34W20,   S07N35W27,

15  S07N31W30,   S07N33W36,   S06N30W16,   S06N34W24,   S06N31W36,

16  S05N32W12,   S05N32W18,   S05N30W19,   S05N31W32,   S05N31W34,

17  S05N31W35,   S05N30W31,   S05N30W32,   S04N34W02,   S04N26W07,

18  S04N25W17, S07S04W26, S05S04E03, M27S17E09, M27S12E32, M28S12E05,

19  M29S12E10,   M29S13E20,   M29S12E26,   M29S13E29,   M29S12E33,

20  M29S13E34,   M30S12E04,   M30S13E04,   M30S13E03,   M30S12E08,

21  M30S12E09,   M30S12E17,   M30S12E24,   M30S12E25,   M30S13E30,

22  M30S13E29,   M31S14E22,   M31S14E32,   M32S12E04,   M32S12E01,

23  M32S14E06,   M32S13E13,   M32S17E17,   M32S13E22,   M32S13E23,

24  M32S13E26,   M32S13E35,   M32S13E36,   S12N35W26,   S12N35W36,

25  S11N35W09,   M06N10W32,   M05N10W08,   M05N10W21,   M05N10W28,

26  M05N10W33,   S11N29W09,   M32S13E31,   M22N05E27,   M10S05E11,

27  M10S03W33,   M13S02E03,   M13S05E07,   M14N16W34,   M02N04W13,

28  M01S02E26,   M02S03E03,   M02S02W13,   M03S03E07,   M03S05E19,

M04S01E13, M05S01E13, M05S05W30, M08S05E15, M11S03E20, M12S02E08, M12S02E31, M18S01W27, M18S04E04, M20S02E05, M27S09E16, M27S08E27, M01S02E18, M01S01E29, M06N09W33, M04N06W26, M04N05W29, S08N35W07, M30S12E16, M30S13E19, M31S12E33, S11N35W04,  and M05N10W05.

   **c.   Buffer Areas.**

      **1.   Ground Use Buffer Area.**  Except as provided by the exclusions, exemptions, and termination provisions described below in paragraphs 5, 6, 7, and 8, the EPA's authorization of ground use of any of the Pesticides is also ENJOINED, VACATED, and SET ASIDE in:

         **a.**   All areas within 60 feet from the edge of the aquatic breeding, non-breeding aquatic, or upland critical habitat for the California red-legged frog, *Rana aurora draytonii*, described in the April 13, 2006, Federal Register Notice.

         **b.**   All areas within 60 feet from the edge of all Aquatic Features or Upland Habitats for the California red-legged frog within the Sections described in Paragraph 4(b).

      **2.   Aerial Use Buffer Area.**  Except as provided by the exclusions, exemptions, and termination provisions described below in paragraphs 5, 6, 7, and 8, the EPA's authorization of aerial use of any of the Pesticides is also ENJOINED, VACATED, and SET ASIDE in:

         **a.**   All areas within 200 feet from the edge of the aquatic breeding, non-breeding aquatic, or upland critical habitat for the California red-legged frog, *Rana aurora draytonii*, described in the April 13, 2006, Federal Register Notice; and

         **b.**   All areas within 200 feet from the edge of all Aquatic Features or Upland Habitats for the California red-legged frog within the Sections described in Paragraph 4(b).

**5. Terminating Events.**

The injunctive relief, vacatur, and setting aside of EPA's authorizations will terminate automatically for a FIFRA authorization for a particular use of a Pesticide upon the completion of ESA Section 7(a)(2) consultation obligations (including a "no effect" determination) for the authorization of the particular use of the Pesticide pursuant to applicable consultation regulations in effect at the time that the consultation obligations are discharged.  The EPA shall provide Plaintiff and Intervenors with notice of completion of Section 7(a)(2) consultation obligations made pursuant to this paragraph within 14 days of such determination, by facsimile or electronic mail, addressed to Plaintiff's and Intervenors' Counsel of Record in this matter.

**ACTIVITIES EXEMPTED FROM INTERIM INJUNCTIVE RELIEF**

**6. Particular Pesticide Programs Excluded.**

Notwithstanding Paragraph 4, the Court determines that EPA's authorization of the following uses of the Pesticides specified below is NOT ENJOINED, VACATED, OR SET ASIDE:

    **a. Public Health Vector Control Programs.**  EPA's authorization of the use of the Pesticides for the purpose of public health vector control when such program is administered by public entities is NOT ENJOINED, VACATED, OR SET ASIDE.

    **b. Invasive Species and Noxious Weed Programs.**  EPA's authorization of aquatic and non-aquatic uses of the Pesticides for control of state-designated invasive species and noxious weeds when such program is administered by public entities is NOT ENJOINED, VACATED, OR SET ASIDE so long as the following restrictions are implemented:

        **1.** Application of the Pesticides shall be limited to localized spot treatments using hand held devices and may not occur within 15 feet of California red-legged frog aquatic breeding or non-breeding aquatic critical habitats designated in the April 13, 2006 Federal Register

Notice, or within 15 feet of Aquatic Features for the California red-legged frog within the Sections described in Paragraph 4(b);

2.  The Pesticides cannot be used when precipitation is occurring or is forecast to occur within 24 hours;

3.  all spraying must be overseen by a certified applicator; and

4.  for 2, 4-D and triclopyr, only the amine formulations can be used.

**7.   Endangered Species Act Approved Uses.**

EPA's authorization of the use of the Pesticides is NOT ENJOINED, VACATED, OR SET ASIDE where the use of the Pesticide is permissible under one or more of the following:

a.  a "no jeopardy" biological opinion issued under ESA section 7(a)(2) by the United States Fish and Wildlife Service (the "Service") that addresses the use of the Pesticide and effects on the California red-legged frog, provided that such use is consistent with any incidental take statement included with the Service's opinion;

b.  a "reasonable and prudent alternative" identified in a "jeopardy" biological opinion issued under ESA Section 7(a)(2) by the Service that addresses the use of the Pesticide and effects on the California red-legged frog, provided that such use is consistent with the "reasonable and prudent alternative" and any incidental take statement included with the Service's opinion;

c.  a written concurrence by the Service in a "not likely to adversely affect" determination made under ESA Section 7(a)(2) that addresses the use of the Pesticide and effects on the California red-legged frog;

d.  an incidental take permit issued by the Service under ESA Section 10(a) that authorizes the take of the California red-legged frog from application or use of the Pesticide;

e.  completion of a "not likely to adversely affect" determination made by an action agency to satisfy its ESA Section 7(a)(2) consultation obligation for a particular

use of a Pesticide pursuant to applicable regulations in effect at the time that the determination is made.

**8.   Specific Pesticide Product or Use Exceptions.**

Notwithstanding Paragraph 4, the Court determines that the EPA's authorization of the following uses of the Pesticides specified below is NOT ENJOINED, VACATED, OR SET ASIDE:

**a.**   EPA's authorization of use of the Pesticides in cattle ear tags;

**b.**   EPA's authorization of indoor uses of the Pesticides;

**c.**   EPA's authorization of tree injection applications of the Pesticides;

**d.**   EPA's authorization of homeowner applications of the Pesticides to household potted plants;

**e.**   EPA's authorization of use of the Pesticides in flea and tick collars for dogs and cats;

**f.**   EPA's authorization of use of the Pesticides in manufacturing end-use products;

**g.**   EPA's authorization of any use of 1,3-dichloropropene (telone) and chloropicrin, provided that such use occurs at least sixty feet from Aquatic Features within the Sections described in Paragraph 4(b) and/or at least sixty feet from aquatic breeding or non-breeding aquatic critical habitats  for the California red-legged frog designated in the April 13, 2006 Federal Register Notice;

**h.**   EPA's authorization of localized spot treatments of the Pesticides using handheld, devices on rights-of-way, roadsides, pastures, lawns, or forests, provided that such use occurs at least sixty feet from Aquatic Features within the Sections described in Paragraph 4(b) and/or at least sixty feet from aquatic breeding or non-breeding aquatic critical habitats for the California red-legged frog designated in the April 13, 2006 Federal Register Notice;

**i.**   EPA's authorization of the Pesticide's use for spot treatments of wasp and hornet nests, provided that such use occurs at least sixty feet from Aquatic Features within the Sections described in Paragraph 4(b) and/or at least sixty feet from

aquatic breeding or non-breeding aquatic critical habitats for the California red-legged frog designated in the April 13, 2006, Federal Register Notice;

**j.** EPA's authorization of individual tree removal using cut stump application of the Pesticides, provided that such use occurs at least sixty feet from Aquatic Features within the Sections described in Paragraph 4(b) and/or at least sixty feet from aquatic breeding or non-breeding aquatic critical habitats for the California red-legged frog designated in the April 13, 2006, Federal Register Notice;

**k.** EPA's authorization of basal bark application of the Pesticides to individual plants, provided that such use occurs at least sixty feet from Aquatic Features within the Sections described in Paragraph 4(b) and/or at least sixty feet from aquatic breeding or non-breeding aquatic critical habitats for the California red-legged frog designated in the April 13, 2006, Federal Register Notice;

**l.** EPA's authorization of the use of any of the Pesticides in bait stations, provided that such use occurs at least sixty feet from Aquatic Features within the Sections described in Paragraph 4(b) and/or at least sixty feet from aquatic breeding or non-breeding aquatic critical habitats for the California red-legged frog designated in the April 13, 2006, Federal Register Notice.

## NOTIFICATION REQUIREMENTS

**9.    Content and Distribution of Brochure.**

The Court orders the EPA to develop a bilingual (English & Spanish) brochure describing (1) the unique biology of frogs that influences their susceptibility to environmental pollution including pesticides, (2) the California red-legged frog and its habitat needs, (3) the status of the California red-legged frog under the Endangered Species Act, (4) tips that may reduce the potential exposure of the California red-legged frog to pesticides, and (5) stating that the Court has issued an injunction setting aside EPA's registration of certain pesticides within certain areas of California, (6) listing the counties that include areas where the Court's injunction applies, (7) providing a small map of the entire State of California highlighting the counties where the Court's injunction applies, and (8) referring interested parties to EPA's website for the

13

full text of the Court's order and additional maps identifying the areas where the Court's

injunction applies.

The front cover of the brochure will incorporate the following written and graphic

information:

**FROGS AND PESTICIDE HAZARDS**

**Some pesticide products may harm frogs or their habitat.**

The heading "Frogs and Pesticide Hazards" and the subsequent statement shall be in a

large font and shall be highly visible.  Additionally, a prominent graphic of the California red-

legged frog must also be included on the cover of the brochure.

The EPA shall distribute a copy of this brochure to all commercial certified applicators of

the Pesticides within the state of California; to all private certified applicators residing in

California counties where Use Authorizations are Enjoined, Vacated, and Set Aside by this

Order; registrants of the Pesticides; and to the California Department of Pesticide Regulation,

California Department of Fish and Game, and Pacific Region of the United States Fish and

Wildlife Service.  In addition, EPA shall distribute two-hundred and fifty (250) copies of this

brochure to each of the County Agricultural Commissioner and Cooperative Extension Agent

offices in California counties where Use Authorizations are Enjoined, Vacated, and Set Aside by

this Order.

**10. Notification of Order.**

The EPA is directed to mail copies of this Order directly to all registrants of the

Pesticides.  The EPA is directed to inform the public of the Court's Order by submitting notice of

this order for publication in the Federal Register and by displaying the terms of this Order on

EPA's website.

**MODIFICATIONS TO INJUNCTIVE RELIEF**

**11. Modifications to Injunctive Relief.**

The parties reserve the right to seek to have this Court modify this injunctive relief

(including both the schedule and the interim injunctive relief) because of EPA's and the

Service's ongoing actions to comply with the ESA, to meet the requirements of other federal

14

agencies or departments, or to deal with circumstances not presently anticipated.  The Court will consider such future requests as it deems appropriate.

## DISPUTE RESOLUTION

**12.** In the event of a disagreement between the Parties concerning the interpretation or performance of any aspect of this Settlement Agreement, the dissatisfied Party shall provide the other Parties with written notice of the dispute and a request for negotiations.  The Parties shall confer in order to attempt to resolve the dispute within 14 days after receipt of the notice, or such time thereafter as is mutually agreed upon.  If the Parties are unable to resolve the dispute within 21 days after receipt of the notice, or such time thereafter as is mutually agreed upon, then any Party may petition the Court to resolve the dispute. The Court will consider such future requests as it deems appropriate.

## ATTORNEYS' FEES

**13.** Federal Defendants agree that Plaintiff is entitled to reimbursement of reasonable attorneys' fees and costs, as provided in 16 U.S.C. § 1540(g).  Federal Defendants and Plaintiff agree to attempt to resolve Plaintiff's claim for fees and costs for all claims in this action expeditiously, without the need for Court intervention.  If the Federal Defendants and Plaintiff cannot agree on the amount of such fees within 30 days of the court order approving this Stipulated Injunction, Plaintiff shall file a motion for attorneys' fees and costs with the Court in this matter.  The Parties recognize that Defendants have not waived any defense to and preserve their right to challenge the reasonableness of the amount of attorneys' fees and costs requested by Plaintiff in the event that Plaintiff and Federal Defendants are unable to resolve Plaintiff's claim for fees and costs. The Parties further recognize that Plaintiff reserves the right to seek additional fees and costs incurred arising from a need to enforce or defend against efforts to modify this agreement or for any other unforeseen continuation of this action.

**14.**   If the Federal Defendant and Plaintiff cannot agree on the amount of such fees within 30 days of the court order approving this Stipulated Injunction, Plaintiff shall file a motion for attorneys' fees and costs with the Court in this matter.  This 30 day period shall supersede the 14 day time period otherwise applicable pursuant to Federal Rules of Civil Procedure Section

54(d)(2)(B) and the court order approving the stipulated injunction will accordingly operate as an enlargement of time pursuant to Federal Rule of Civil Procedure Section 6(b)(1) for Plaintiffs to file a fee motion.

### SCOPE OF THE ORDER

**15.** This Order does not require EPA to take any action under the Federal Insecticide, Fungicide, and Rodenticide Act including, but not limited to, any action to suspend, cancel, or modify the registration of any pesticide.

**16.** No provision of this Order shall be interpreted as or constitute a commitment or requirement that the EPA take action in contravention of the ESA, the Administrative Procedure Act ("APA"), or any other law or regulation, either substantive or procedural.  Nothing in this Order shall be construed to limit or modify the discretion accorded to EPA by the ESA, the APA, or general principles of administrative law with respect to the procedures to be followed in making the effects determinations described above in Paragraphs 1 and 2 or as to the substance of any such determinations.

**17.** No provision of this Order shall be interpreted as, or constitute, a commitment or requirement that EPA is obligated to spend funds in violation of the Anti-Deficiency Act, 31 U.S.C. Section 1341, or any other provisions of law.

**18.** The Parties agree that their stipulations were negotiated in good faith and that entry of this Order constitutes a settlement of claims that were vigorously contested, denied, and disputed by the Parties.  By stipulating to the entry of this Order, the Parties do not waive any claim or defense.

**19.** The undersigned representatives of each Party certify that they are fully authorized by the Party (or Parties) they represent to agree to the Court's entry of the terms and conditions of this Order and do hereby agree to the terms herein.

**20.** Upon entry of this Order, Plaintiff's complaint shall be dismissed with prejudice.  The dismissal shall apply to and be binding upon the Parties hereto and anyone acting on their behalf, including successors, employees, agents, elected and appointed officers, and assigns. Plaintiff and Defendants-Intervenors agree not to bring, assist any other Party in bringing, or

STIPULATED INJUNCTION AND [PROPOSED] ORDER
Case No. C-02-1580-JSW

join EPA or any other Party in any court proceeding that concerns an alleged violation of

Section 7 of the ESA on the effects of any of the 66 Pesticides identified above in Paragraph 1

on the California red-legged frog until after the completion of any Terminating Event for that

pesticide as set forth in Section 5 of this Order.

**21.** This Stipulated Injunction does not constitute an admission or evidence of any fact,

wrongdoing, misconduct, or liability on the part of the United States, including without

limitation, EPA, its officers, or any other person affiliated with it, by Defendant-Intervenors, or

any interpretation of any applicable provision of law.  This Stipulated Injunction has no

precedential value and shall not be used as evidence in any other court proceeding or in any

other settlement discussions.

**22.** Notwithstanding the dismissal of this action, the Parties have stipulated and requested

that this Court retain jurisdiction to oversee compliance with the terms of this Order and to

resolve any motions to modify such terms.  *See Kokkonen v. Guardian Life Ins. Co. of America*,

511 U.S. 375 (1994).

**23.** The terms of this Stipulated Injunction constitute the entire agreement of the Parties, and

no statement, agreement or understanding, oral or written, which is not contained herein, shall be

recognized or enforced.

**24.** The terms of this Stipulated Injunction shall become effective upon entry of an order by

the Court ratifying this Stipulated Injunction.


SO ORDERED this _____ day of October, 2006.


_____

United States District Judge

STIPULATED INJUNCTION AND [PROPOSED] ORDER
Case No. C-02-1580-JSW

Presented by:

/s/ Justin Augustine

Justin Augustine (CA Bar # 235561)
CENTER FOR BIOLOGICAL DIVERSITY
SAN FRANCISCO BAY AREA OFFICE
1095 Market Street, Suite 511
San Francisco, CA 94103
Telephone: (415) 436-9682
Facsimile: (415) 436-9683
jaugustine@biologicaldiversity.org

Brendan Cummings (CA Bar # 193952)
CENTER FOR BIOLOGICAL DIVERSITY
P.O. Box 549
Joshua Tree, CA 92252
Telephone: (760) 366-2232
Facsimile: (760) 366-2669
bcummings@biologicaldiversity.org

Michael W. Graf (CA Bar # 136172)
Law Offices
227 Behrens Street
El Cerrito, CA 94530
Telephone: (510) 525-7222
Facsimile: (510) 525-1208
mwgraf@aol.com

Attorneys for Plaintiff

KEVIN V. RYAN, United States Attorney
     (CA Bar # 118321)
JAMES CODA, Assistant United States Attorney
     (WI Bar # 1012669)
450 Golden Gate Avenue, P.O. Box 36055
San Francisco, CA 94102
Telephone: (415) 436-6967
Facsimile: (415) 436-7234

SUE ELLEN WOOLDRIDGE, Assistant Attorney General
United States Department of Justice
Environment and Natural Resources Division

JEAN E. WILLIAMS, Chief
SETH M. BARSKY, Assistant Chief

/s/ James A. Maysonett

JAMES A. MAYSONETT, Trial Attorney
     (D.C. Bar # 463856)
Wildlife and Marine Resources Section
JOHN W. SITHER, Trial Attorney
Law and Policy Section
Benjamin Franklin Station, P.O. Box 4390
Washington, D.C. 20044-4390

STIPULATED INJUNCTION AND [PROPOSED] ORDER
Case No. C-02-1580-JSW

Telephone: (202) 514-5484
Facsimile: (202) 514-4231

Attorneys for Federal Defendants

LATHAM & WATKINS LLP

/s/
_____
Louis Leonard III (Ca. Bar No. 226097)
505 Montgomery Street, Suite 1900
San Francisco, California  94111-2562
Telephone:  (415) 391-0600
Facsimile:  (415) 395-8095
Kenneth W. Weinstein (Bar No. 194548)
Janice M. Schneider (D.C. Bar No. 472037)
Amy L. Stein (D.C. Bar No. 473625)
555 Eleventh Street, N.W., Suite 1000
Washington, D.C.  20004-1304
Telephone:  (202) 637-2200
Facsimile:  (202) 637-2201

Attorneys for Intervenor Syngenta Crop Protection, Inc.


/s/ J. Michael Klise
_____
J. Michael Klise (pro hac vice)
Steven P. Quarles (D.C. Bar No. 351668)
CROWELL & MORING LLP
1001 Pennsylvania Avenue, N.W.
Washington, D.C. 20004-2595
(202) 624-2500
Fax:  (202) 628-5116
jmklise@crowell.com

Attorneys for Intervenors Western Plant Health Association, et al.

STIPULATED INJUNCTION AND [PROPOSED] ORDER
Case No. C-02-1580-JSW

**Exhibit 1**

**Aquatic Breeding, Non-breeding Aquatic, and Upland Critical Habitat for the California Red-legged Frog, as Described by the U.S. Fish and Wildlife Service, 71 Fed.Reg. 19244, 19261-62 (April 13, 2006)**

**Aquatic Breeding Habitat**

California red-legged frogs typically lay eggs between December and early April. Eggs hatch within 6 to 14 days depending on water temperatures and require approximately 20 days to develop into tadpoles. Tadpoles in turn require anywhere between 11 to 20 weeks to develop into terrestrial frogs (Storer 1925; Wright and Wright 1949; Bobzien et al. 2000). Water bodies suitable for tadpole rearing must remain watered at least until the tadpoles metamorphose into adults, typically between July and September. Adult California red-legged frogs can survive in moist upland areas after breeding habitat has dried, and can live several years to make new breeding attempts. Therefore, aquatic breeding habitat need not be available every year, but it must be available often enough and for appropriate hydroperiods to maintain a California red-legged frog population during most years.

Aquatic breeding habitat is essential for providing space, food, and cover necessary to sustain all life stages of California red-legged frogs. It consists of low-gradient fresh water bodies, including natural and manmade (e.g., stock) ponds, backwaters within streams and creeks, marshes, lagoons, and dune ponds. It does not include deep lacustrine water habitat (e.g., deep lakes and reservoirs 50 ac (20 ha) or larger in size). The aquatic habitat PCE is essential for frog breeding and for providing space, food, and cover necessary to sustain the early life history stages of larval and juvenile California red-legged frogs. To be considered essential breeding habitat, the aquatic feature must have the capability to hold water for a minimum of 20 weeks in all but the driest of years. This is the average amount of time needed for egg, larvae, and tadpole development and metamorphosis so that juveniles can become capable of surviving in upland habitats. California red-legged frogs usually have completed metamorphosis between July and

September. During periods of drought or less-than-average rainfall, these sites may not hold

water long enough for individuals to complete metamorphosis. However, these sites would still

contain essential features because they constitute breeding habitat in years of average rainfall.

Without aquatic breeding habitats, the California red-legged frog would not survive, reproduce,

develop juveniles, and grow into adult California red-legged frogs that can complete their life

cycles.

**Non-Breeding Aquatic Habitat** The aquatic non-breeding habitat is essential for providing the

space, food, and cover necessary to sustain California red-legged frogs. Nonbreeding aquatic

habitat consists of those aquatic elements identified above, and also includes, but is not limited

to, other wetland habitats such as intermittent creeks, seeps, and springs.  California red-legged

frogs can use large cracks in the bottom of dried ponds as refugia to maintain moisture and

avoid heat and solar exposure (Alvarez 2004). Without these non-breeding aquatic features,

California red-legged frogs would not be able to survive drought periods, or be able to disperse

to other breeding habitat.

**Upland Habitat**

Upland and riparian habitats associated with essential aquatic habitat are essential to maintain

California redlegged frog populations. The associated upland and riparian habitats provide food

and shelter sites for California redlegged frogs and assist in maintaining the integrity of aquatic

sites by protecting them from disturbance and supporting the normal functions of the aquatic

habitat. Upland habitat associated with occupied wetland habitat often contains blackberry

(*Rubus* sp.) and other upland perennial species that provide for shelter from predatory species

and forage habitat (Service 2002).

Upland habitat that contains the features essential to the conservation of the subspecies consists

of natural areas within 200 ft (60 m) of the edge of the riparian vegetation or dripline, or the

edge of the watershed boundary, whichever is closer. This is based on the dispersal capabilities

STIPULATED INJUNCTION AND [PROPOSED] ORDER
Case No. C-02-1580-JSW

of the subspecies (see Dispersal Habitat below), and research identifying the use of upland areas by the subspecies (Rathbun et al. 1993; Bulger et al. 2003; Tartarian 2004). Tatarian (2004) found California redlegged frogs inhabiting upland areas for 50 days at a distance of 302 ft (92 m) from aquatic habitat; Bulger et al. (2003) found that the subspecies is capable of inhabiting upland habitats within 200 ft (60 m) of aquatic habitat for continuous durations exceeding 20 days; and Rathbun et al. (1993) observed California red-legged frogs inhabiting upland riparian habitat for durations up to 77 days. California red-legged frogs often disperse from their breeding habitat to forage and seek suitable upland habitat if aquatic habitat is not available. Suitable upland habitat includes structure that provides shade, moisture, and cooler temperatures. This structure may be natural, such as the spaces under boulders or rocks and organic debris (e.g., downed trees or logs), or it could be manmade, such as industrial debris and agricultural features (drains, watering troughs,  abandoned sheds, or stacks of hay or other vegetation). California red-legged frogs will also use small mammal burrows and moist leaf litter as refugia (Jennings and Hayes 1994; Fellers and Kleeman 2005).